FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
OF MASSACHUSETTS

U.S. DISTRICT COURT
DISTRICT OF MASS.

04    11101    RCL

| | |
|---|---|
| JAMES KARANFILIAN, On Behalf of Himself and All Others Similarly Situated,<br><br>              Plaintiff,<br><br>      v.<br><br>VASO ACTIVE PHARMACEUTICALS, INC., STEPHEN G. CARTER and JOHN J. MASIZ,<br><br>              Defendants. | CIVIL ACTION NO. MAGISTRATE JUDGE<br><br>**CLASS ACTION COMPLAINT**<br>**FOR VIOLATIONS OF THE**<br>**FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED**<br>RECEIPT #<br>AMOUNT $150<br>SUMMONS ISSUED 445<br>LOCAL RULE 4.1<br>WAIVER FORM<br>MCF ISSUED<br>BY DPTY. CLK.<br>DATE 5-25-04 |

Plaintiff individually and on behalf of all other persons similarly situated, by his undersigned

attorneys, alleges upon personal knowledge as to himself and his own acts, and information and belief

as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys,

which included, among other things, a review of the public documents and announcements made by

Defendants, Securities and Exchange Commission ("SEC") filings, and press releases regarding Vaso

Active Pharmaceuticals, Inc. ("Vaso" or the "Company"), alleges, for his Complaint, as follows:

## SUMMARY AND OVERVIEW

1.      This is a securities class action on behalf of all purchasers of the common stock of Vaso

between December 11, 2003 and March 31, 2004 (the "Class Period"), against Vaso and certain of its

officers and directors for violations of the Securities Exchange Act of 1934 (the "1934 Act").

2.    Vaso's principal activity is to develop, manufacture and market pharmaceutical products. The Company focuses on vaso active lipid encapsulated, or VALE, transdermal delivery technology drugs. Currently, Vaso markets Athlete's Relief and Osteon in the United States. The Company's products include analgesics, toenail fungal treatment, acne, first aid, hand and body lotion and psoriasis treatment. The Company is planning to rebrand the deFEET athlete's foot antifungal medication product as Termin8 and Xtinguish.

3.    On April 1, 2004, Reuters issued a release entitled "UPDATE - SEC suspends trading in Vaso Active stock." The release stated in part:

> U.S. securities regulators on Thursday halted trading of Vaso Active Pharmaceuticals Inc., a marketer of over-the-counter pharmaceuticals, through April 15.
>
> The Securities and Exchange Commission questioned assertions made by the Danvers, Massachusetts-based company of an FDA approval of certain key products and regulatory consequences of the future application of their primary product, among others.
>
> Vaso Active was not immediately available for comment.
>
> The SEC said it questioned the accuracy of assertions made in the company's press releases, annual report, registration statement and public statements to investors.
>
> Vaso shares closed at $7.59 Wednesday on Nasdaq.

4.    The true facts, which were known by each of the defendants but actively concealed from the investing public during the Class Period, were as follows:

(a)    The Company's claims that its "clinical trial" was "supervised by independent physicians and analyzed by the New England Medical Center in Boston" Massachusetts was grossly misleading in that:

2

(i)     the New England Medical Center had nothing to do with the study associated with the "clinical trial";

(ii)     the New England Medical Center was unable to draw any conclusions concerning the effectiveness of the product and played no role in selecting the patients and gathering evidence; and

(iii)     the trial was not supervised by "independent physicians" – it was overseen by one podiatrist who was not independent but actually "handpicked" by the Company's majority shareholder and handsomely compensated.

(b)     The Company's so-called "clinical trial" was not new or revolutionary but rather more than half a decade old.

(c)     The American Association of Medical Foot Specialists and its so-called "endorsement" of deFEET was of little, if any, value. In fact, the "association" is not widely known of or respected in the medical community. It was headquartered in a hotel until it was moved to the President's medical office. Moreover, in exchange for the questionable endorsement the President of the Association, Vaso was asked to make a donation to an association scholarship program.

(d)     Contrary to defendant Masiz's claim that there was significant demand for the Company's stock at an "institutional level" – so much so that the Company, in response to this demand, consummated a three-for-one stock split – there was *de minimus*, if any, institutional demand for the Company's shares. Moreover, there are no institutional or retail analysts who even follow the Company.

3

5.    On April 16, 2004, Vaso common stock resumed trading and closed at $1.75 per share, representing a loss of approximately 76% from its last closing price of $7.59 on March 31, 2004. Accordingly, purchasers of Vaso common stock during the Class Period suffered damages.

## JURISDICTION AND VENUE

6.    Jurisdiction is conferred by § 27 of the 1934 Act. The claims asserted herein arise under §§ 10(b) and 20(a) of the 1934 Act and Rule 10b-5.

7.    (a)    Venue is proper in this District pursuant to § 27 of the 1934 Act. Many of the false and misleading statements were made in or issued from this District.

(b)    The Company's principal executive offices are in Danvers, Massachusetts, where the day-to-day operations of the Company are directed and managed.

## THE PARTIES

8.    Plaintiff purchased Vaso common stock as described in the attached certification and was damaged thereby.

9.    Vaso's principal activity is to develop, manufacture and market pharmaceutical products. The Company focuses on VALE transdermal delivery technology drugs. Currently, Vaso markets Athlete's Relief and Osteon in the United States. The Company's products include analgesics, toenail fungal treatment, acne, first aid, hand and body lotion and psoriasis treatment. The Company is planning to rebrand the deFEET athlete's foot anti-fungal medication product as Termin8 and Xtinguish.

10.    Defendant John J. Masiz ("Masiz") was the President and CEO of Vaso. He is also the CEO and Chairman of BioChemics, the Company's controlling shareholder.

4

11.    Defendant Stephen G. Carter ("Carter") was the Chief Scientific Officer ("CSO") of Vaso. He is also the CSO of BioChemics, the Company's controlling shareholder.

12.    The individuals named as defendants in ¶¶ 10-11 are referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Vaso's Registration Statement, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them but not to the public, each of these defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## CLASS ACTION ALLEGATIONS

13.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Vaso common stock (the "Class") on the open market during the Class Period. Excluded from the Class are defendants.

14.    The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the

5

Court. Vaso had more than 9 million shares of stock outstanding, owned by hundreds if not thousands of persons.

15.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)    Whether the Federal Securities Laws were violated by defendants;

(b)    Whether defendants omitted and/or misrepresented material facts;

(c)    Whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)    Whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e)    Whether the price of Vaso's common stock was artificially inflated; and

(f)    The extent of damage sustained by Class members and the appropriate measure of damages.

16.    Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

17.    Plaintiff will adequately protect the interests of the Class and has retained counsel, who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

18.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

6

## **BACKGROUND**

19.     Vaso's principal activity is to develop, manufacture and market pharmaceutical

products. The Company focuses on VALE transdermal delivery technology drugs. Currently, the

Company markets Athlete's Relief and Osteon in the United States. The Company's products include

analgesics, toenail fungal treatment, acne, first aid, hand and body lotion and psoriasis treatment. The

Company, at the time of the IPO, was planning to rebrand the deFEET athlete's foot anti-fungal

medication product as Termin8 and Xtinguish.

20.     Vaso is essentially an early stage company focused on commercializing, marketing and

selling over-the-counter, or OTC, pharmaceutical products. It began its operations as a division of

BioChemics, Inc. in January 2001, and has only operated as an entity independent of BioChemics since

January 2003. The Company's operating history was extremely limited. The deFEET, Athlete's Relief

and Osteon products were in the early stages of commercialization as the Company prepared to go

public. With the exception of the introduction of deFEET to the marketplace by BioChemics while the

Company was still a division of BioChemics (a company also controlled by the Individual Defendants),

it had not yet commercialized, marketed or sold any products or recognized significant revenue from

product sales.

21.     The Company claimed it needed to complete its IPO in order to:

        (a)     fund the continued development, commercialization and sale of its products and

product candidates, which the Company estimated would require approximately $1.1 million (19.4% of

net proceeds);

7

(b)      to implement its strategic marketing and commercialization plan, which the Company estimated would require approximately $1.9 million (33.5% of net proceeds), of which approximately $1.2 million was allocated to fund its radio advertising campaign;

(c)      to recruit and hire individuals for key senior management positions, which the Company estimated would require approximately $200,000 (3.5% of net proceeds);

(d)      to cover the cost of providing sales incentives, products samples and discounts, which the Company estimated would require approximately $350,000 (6.2% of net proceeds);

(e)      to repay BioChemics approximately $99,000 (1.7% of net proceeds) for management fees charged back to the Company since it became a stand-alone entity upon its incorporation for centralized accounting, data processing, utilities, office space rental, supplies, telephone and other BioChemics corporate services and infrastructure costs, and approximately $347,000 (6.1% of net proceeds) for other operational charges paid by BioChemics to third parties on its behalf since that time; and

(f)      to provide working capital and for general corporate purposes, which the Company estimated would require approximately $1.68 million (29.6% of net proceeds).

22.      By infusing capital in Vaso, BioChemics (also controlled by defendants) would blossom. BioChemics' balance sheet and prospectus improved dramatically upon the offering and further improved the Individual Defendants' own net worth.

## DEFENDANTS' FALSE AND MISLEADING REGISTRATION STATEMENT

23.      The Company filed its Registration Statement on December 11, 2003. According to the Company's Registration Statement, the Company's plans for its key product were as follows:

8

Osteon and Athlete's Relief will now be marketed, distributed, commercialized and sold by us in the United States. During the course of the 12 month period immediately following this offering, all deFEET branded product currently in circulation will either be sold or removed from circulation and replaced with an identical product which will be commercialized, marketed and sold by us under the name Termin8 and/or Xtinguish. The formulation and functionality of Termin8 and Xtinguish will be identical to that of deFEET.

All three of these products have been through the research and development, pre-clinical study and clinical trial stages and have received FDA approval. They are either currently being marketed and commercialized or will enter the marketing and commercialization phase upon the consummation of this offering.

deFEET is a topically-applied, transdermal athlete's foot anti-fungal medication designed to eliminate athlete's foot infection in less than 10 days. It employs the VALE drug delivery system to effectively and efficiently deliver a mild antifungal agent called Tolnaftate into the skin surrounding the affected area. In a pilot clinical trial, supervised by independent physicians and analyzed by the New England Medical Center in Boston, MA, 20 severely infected athlete's foot patients were treated and studied over a 42-day period. There were two groups in the study, one treated with deFEET and the other with Schering-Plough's Tinactin®. In this study, deFEET eliminated the infection in 90% of the test group in 7 days and 100%of its patient population in 10 days. Tinactin®, which also uses Tolnaftate in the same concentration as deFEET, required 42 days to cure its first patient. These results demonstrate the ability of the VALE technology to deliver Tolnaftate much more effectively than a product not utilizing VALE technology ....

## POST IPO STATEMENTS

24.     On February 19, 2004, the Company issued a release entitled "Vaso Active

Pharmaceuticals Declares 3 for 1 Stock Split." The release stated in part:

Vaso Active Pharmaceuticals, Inc. (Vaso Active) of Danvers, Massachusetts, announced today that the Board of Directors has declared a 3 for 1 stock split effective in the form of a 200 percent stock dividend payable on or about March 5, 2004 to holders of

9

record of both Class A and Class B common stock as of February 23,
2004.  Under the terms of this stock split, holders of the Company's
Class A and Class B common stock will receive a dividend of two
shares of Class A and Class B common stock for every one share of
Class A and Class B common stock held on that record date.  The
dividend will be paid in authorized but unissued shares of Class A and
Class B common stock of the Company.

The Company anticipates that the combined amount of issued and
outstanding shares of both the Class A and Class B common stock
after the split will be increased from 3,428,000 shares to 10,284,000
shares.

John Masiz, Chief Executive Officer and Chairman of Vaso Active
stated[:] "One of the ways many institutions measure investment appeal
is through the liquidity of a security.  Recently, there has been significant
demand for our common stock at the institutional level.  However
liquidity has proved to be an obstacle.  To help resolve this, the Board
of Directors has declared this 3-for-1 stock split to increase our
liquidity to the public market place, thus enhancing our securities'
appeal to both retail and institutional investors."

25.    On March 17, 2004, the Company issued a press release entitled "Vaso Active

Pharmaceuticals Completes Financing at a Premium."  The press release stated in part:

Vaso Active Pharmaceuticals, (Vaso Active) of Danvers,
Massachusetts, is pleased to announce that it has entered into a private
placement transaction in the amount of $7,500,000 with an institutional
investor.  The investment which is in the form of an 18 month 2%
Convertible Note, is convertible into shares of Class A common stock
at a conversion rate of $9 per share, at the option of the investor.  Both
principal and interest are payable in cash or in shares of Class A
common stock, at the option of Vaso Active.  The purchase agreement
includes anti-hedging provisions and the maturity date may be extended
for up to two years at the option of the investor.  In addition, Vaso
Active issued to the investor warrants to purchase 166,667 shares of
Class A common stock at an exercise price of $8.75 per share.

Mr. John J. Masiz, President and Chief Executive Officer of Vaso
Active was very pleased that Vaso Active was successful in
consummating this institutional private placement at what Mr. Masiz

10

considered favorable terms. "The ability to secure additional funds through the completion of this private placement gives Vaso Active significant new working capital to augment the working capital derived from its IPO. This will enhance Vaso Active's capital base with which to operate and will permit the Company to take advantage of strategic opportunities that arise in the course of growing our business. In addition, the execution of this agreement at a premium to the current market price of our common stock underscores the value of our technology to a material investor."

## THE TRUTH IS REVEALED

26.    On April 1, 2004, Reuters issued a release entitled "UPDATE - SEC suspends trading in Vaso Active stock." The release stated in part:

> U.S. securities regulators on Thursday halted trading of Vaso Active Pharmaceuticals Inc., a marketer of over-the-counter pharmaceuticals, through April 15.
>
> The Securities and Exchange Commission questioned assertions made by the Danvers, Massachusetts-based company of an FDA approval of certain key products and regulatory consequences of the future application of their primary product, among others.
>
> Vaso Active was not immediately available for comment.
>
> The SEC said it questioned the accuracy of assertions made in the company's press releases, annual report, registration statement and public statements to investors. Vaso shares closed at $7.59 Wednesday on Nasdaq.

27.    The true facts which were known by each of the defendants, but actively concealed from the investing public during the Class Period, were as follows:

(a)    The Company's claims that its "clinical trial" was "supervised by independent physicians and analyzed by the New England Medical Center in Boston" Massachusetts was grossly misleading in that:

11

(i)    the New England Medical Center had nothing to do with the study associated with the "clinical trial";

(ii)    the New England Medical Center was unable to draw any conclusions concerning the effectiveness of the product and played no role in selecting the patients and gathering evidence; and

(iii)    the trial was not supervised by "independent physicians" – it was overseen by one podiatrist who was not independent but actually "handpicked" by the Company's majority shareholder and handsomely compensated.

(b)    The Company's so-called "clinical trial" was not new or revolutionary but rather more than half a decade old.

(c)    The American Association of Medical Foot Specialists and its so-called "endorsement" of deFEET was of little, if any, value.  In fact, the "association" is not widely known or respected in the medical community.  It was headquartered in a hotel until it was moved to the President's medical office.  Moreover, in exchange for the questionable endorsement the President of the Association, Vaso was asked to make a donation to an association scholarship program.

(d)    Contrary to defendant Masiz's claim that there was significant demand for the Company's stock at an "institutional level" – so much so that the Company, in response to this demand, consummated a three for one stock split – there was de minimus, if any, institutional demand for the Company's shares.  Moreover, there are no institutional or retail analysts who even follow the Company.

12

## SCIENTER

28.     In addition to the above-described involvement, each Individual Defendant had

knowledge of Vaso's problems and was motivated to conceal such problems. Masiz and Carter, as

CEO and CSO, respectively, were responsible for reporting to and communications with the market.

Each Individual Defendant sought to demonstrate that he could lead the Company successfully and

generate the growth expected by the market.

29.     Defendants were motivated to engage in the fraudulent practices alleged herein in order

to obtain financing via the Company's IPO and subsequent private placement for the Company and

create a market for their shares and options as well as protect BioChemics' financial interest in the

Company.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

30.     Each defendant is liable for (i) making false statements, or (ii) failing to disclose adverse

facts known to him about Vaso. Defendants' fraudulent scheme and course of business that operated

as a fraud or deceit on purchasers of Vaso common stock was a success, as it (i) deceived the

investing public regarding Vaso's prospects and business; (ii) artificially inflated the prices of Vaso's

common stock; (iii) allowed defendants to arrange to sell and actually sell $15 million worth of Vaso

shares at artificially inflated prices; and (iv) caused plaintiff and other members of the Class to purchase

Vaso common stock at inflated prices.

## NO SAFE HARBOR

31.     The statutory safe harbor provided for forward-looking statements under certain

circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many

13

of the specific statements pleaded herein were not identified as "forward-looking statements" when

made. To the extent there were any forward-looking statements, there were no meaningful cautionary

statements identifying important factors that could cause actual results to differ materially from those in

the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor

does apply to any forward-looking statements pleaded herein, Defendants are liable for those false

forward-looking statements because at the time each of those forward-looking statements was made,

the particular speaker knew that the particular forward-looking statement was false, and/or the

forward-looking statement was authorized and/or approved by an executive officer of the Company

who knew that statement was false when made.

## **FIRST CLAIM FOR RELIEF**

### For Violation of § 10(b) of the 1934 Act and Rule 10b 5
### **Against All Defendants**

32.     Plaintiff repeats and realleges each and every allegation contained above as if fully set

forth herein.

33.     During the Class Period, defendants disseminated or approved the false statements

specified above, which they knew or deliberately disregarded were misleading in that they contained

misrepresentations and failed to disclose material facts necessary in order to make the statements made,

in light of the circumstances under which they were made, not misleading.

34.     Defendants violated § 10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes, and artifices to defraud;

14

(b)    Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Vaso common stock during the Class Period.

35.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Vaso common stock. Plaintiff and the Class would not have purchased Vaso common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

36.    As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Vaso common stock during the Class Period.

## SECOND CLAIM FOR RELIEF

### For Violation of § 20(a) of the 1934 Act
### Against All Defendants

37.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38.    The Individual Defendants acted as controlling persons of Vaso within the meaning of § 20(a) of the 1934 Act. By reason of their positions as officers and/or directors of Vaso, and their ownership of Vaso stock, the Individual Defendants had the power and authority to cause Vaso to engage in the wrongful conduct complained of herein. Vaso controlled each of the Individual

15

Defendants and all of its employees. By reason of such conduct, the Individual Defendants and Vaso are liable pursuant to § 20(a) of the 1934 Act.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

      A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

      B.     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

      C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

      D.     Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 25, 2004

SHAPIRO HABER & URMY LLP

_Theodore M. Hess-Mahan_
Theodore M. Hess-Mahan BBO #557109
Exchange Place
53 State Street
Boston, MA  02109
Tel: (617) 439-3939

16

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
Mel E. Lifshitz
10 East 40th Street
New York, NY  10016
Tel: (212) 779-1414

**Attorneys for Plaintiff**

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, _JAMES KARANFILIAN_ ("Plaintiff"), declare the following as to the claims asserted under the federal securities laws:

1.  Plaintiff has reviewed the complaint filed in this matter and has authorized the filing of a complaint based on similar allegations in a related or amended complaint. Plaintiff retains Bernstein Liebhard & Lifshitz, LLP and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.  Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

3.  Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial. I understand that the litigation is not settled, this is not a claim form, and sharing in any recovery is not dependent upon execution of this Certification.

4.  Plaintiff's transaction(s) in the VASO ACTIVE PHARMACEUTICALS, INC. security that is the subject of this action during the period of 12/11/03 through and including 3/31/04 are as follows:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 2000 | VAPH | BUY | 2/19/04 | 22.05 |
| 500 | VAPH | SELL | 3/5/04 | 37.386 |
| 2000 | VAPH | BUY | 3/12/04 | 7.98 |

Please list other transactions on a separate sheet of paper, if necessary.

5.  During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for the class in any action filed under the federal securities laws except as indicated here:

6.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, or as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _13_ day of _MAY_, 2004.

_____
Signature

JAMES KARANFILIAN
Print Name

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) JAMES KARANFILIAN v. VASO ACTIVE PHARMACEUTICALS, INC.

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET.   (SEE LOCAL RULE 40.1(A)(1)).

    ___    I.      160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    X    II.      195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, *Also complete AO 120 or AO 121
                    740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.     for patent, trademark or copyright cases

    ___    III.      110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                    315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                    380, 385, 450, 891.

    ___    IV.      220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                    690, 810, 861-865, 870, 871, 875, 900.

    ___    V.      150, 152, 153.

*04 11101 RCL*

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.
In Re Vaso Active Pharmaceuticals Securities Litigation 1:04-cv-10708-RCL

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

                                            YES ☐     NO **X**

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?   (SEE 28 USC §2403)

                                            YES ☐     NO **X**

    IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

                                            YES ☐     NO **X**

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

                                            YES ☐     NO **X**

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

                                            YES **X**     NO ☐

       A.     IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

           EASTERN DIVISION    **X**      CENTRAL DIVISION ☐      WESTERN DIVISION ☐

       B.     IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

           EASTERN DIVISION ☐      CENTRAL DIVISION ☐      WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Theodore M. Hess-Mahan

ADDRESS  Shapiro Haber& Urmy LLP, 75 State Street, Boston, MA 02109

TELEPHONE NO.  (617) 439-3939

(Karanfilian Filing Category Form.wpd  - 11/27/00)

JS 44   (Rev. 3/99)
# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
JAMES KARANFILIAN,
individually and On Behalf of all Others Similarly Situated.

**DEFENDANTS**

2004 MAY 25 P 2:59

U.S. DISTRICT COURT
DISTRICT OF MASS.

**(b)** County of Residence of First Listed   Out of state
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed   Middlesex
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Matthew L. Tuccillo (BBO # 643336)
Shapiro Haber & Urmy LLP
75 State Street
Boston, MA 02109
(617) 439-3939

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

X 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties
in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1  ☐ | ☐ 1 | Incorporated or Principal of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another | 2  ☐ | ☐ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | 3  ☐ | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | **PERSONAL INJURY** | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 365 Personal Injury— | of Property 21 USC | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | Liability | ☐ 660 Occupational | ☐ 840 Trademark | X 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | **PERSONAL PROPERTY** | Safety/Health | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization |
| ☐ 195 Contract Product | ☐ 360 Other Personal | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| Liability | Injury | Product Liability | ☐ 720 Labor/Mgmt. | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Relations | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 730 Labor/Mgmt.Reporting | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | & Disclosure Act | ☐ 870 Taxes (U.S. Plaintiff | Determination Under Equal |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 740 Railway Labor Act | or Defendant) | Access to Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor | ☐ 871 IRS—Third Party | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Litigation | 26 USC 7609 | X 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. | | |
| | | ☐ 555 Prison Condition | Security Act | | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

x 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated
or
Reopened

☐ 5   Transferred from
another district
(specify)

☐ 6   Multidistrict
Litigation

☐ 7   Appeal to
District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION   (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)
Section 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 USC §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 CFR 240.10b-5.

## VII. REQUESTED IN COMPLAINT:
X   CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND

CHECK YES only if demanded in complaint:
JURY DEMAND:   X Yes   No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE   LINDSAY

DOCKET NUMBER   04CV10708 RCL

DATE   5/25/2004

SIGNATURE OF ATTORNEY OF RECORD
Theodore M. Hess Mahan